LYSSA S. ANDERSON
Nevada Bar No. 5781
KRISTOPHER J. KALKOWSKI
Nevada Bar No. 14892
KAEMPFER CROWELL
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada  89135
Telephone:   (702) 792-7000
Fax:             (702) 796-7181
landerson@kcnvlaw.com
kkalkowski@kcnvlaw.com

*Attorneys for Defendants*
*Las Vegas Metropolitan Police Department*
*and Sergeant Smith*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARK CLIFFORD SYKES, Sui Juris, | CASE NO.:    2:21-cv-01479-RFB-DJA |
| Plaintiff, | |
| vs. | **LVMPD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT OF CLARK COUNTY NEVADA, et al., | |
| Defendants. | |

Defendants Las Vegas Metropolitan Police Department and Sergeant Smith (collectively "LVMPD Defendants"), through their counsel, Kaempfer Crowell, move under Federal Rule of Civil Procedure 56 for summary judgment on Plaintiff Mark Sykes's claims against them.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 5

II.     BACKGROUND ..................................................................................................... 6

        A.      Factual History ........................................................................................... 6

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 1 of 27

1.  Officer Hunt Calls Sergeant Joseph Smith, Who Was Not on Scene, About Plaintiff's Request for a Supervisor and the Basis for the Traffic Stop...... 7

2.  Plaintiff Calls the 9-1-1 Emergency Line to Protest Hunt's Actions.......... 7

3.  Officer Raymond Barrett Arrives on Scene to Assist Hunt. ...................... 8

4.  Officer Hunt Calls Sergeant Smith to Report that Plaintiff Called 9-1-1 to Demand a Supervisor, To Which Smith Instructs Hunt to Arrest Plaintiff for Misusing 9-1-1. ............................................................................... 8

5.  Officer Hunt Transports Plaintiff to CCDC for Booking. ......................... 8

6.  Plaintiff Is Released from CCDC One Day after Arrest............................ 9

7.  LVMPD's Internal Affairs Bureau Reviews an Internal Complaint filed by Plaintiff and Finds that Hunt Did Not Violate Plaintiff's Rights................ 9

B.  **Procedural History**..................................................................................... **9**

III.  **LEGAL STANDARD** ............................................................................................ **11**

IV.  **ARGUMENT** ........................................................................................................... **11**

A.  **Summary Judgment Revolves Around Only Sergeant Smith and LVMPD. 11**

B.  **Plaintiff's Count 1 Fails against Sergeant Smith Because Smith Was Not on Scene during the Traffic Stop, Did Not Search Plaintiff's Car, Did Not Order the Traffic Stop or Search, and Lawfully Authorized Plaintiff's Arrest....... 11**

1.  Sergeant Smith's Conduct Amounts to the Lawful Instruction for a Traffic Citation and, Later, Arresting Plaintiff Based on Plaintiff Committing the Crime of Misusing 9-1-1 during a Traffic Stop. ..................................... 13

2.  Qualified Immunity Shields Sergeant Smith from Count 1..................... 16

C.  **Plaintiff's Count 1 Did Not Name LVMPD as a Defendant and, If Plaintiff Intended to Assert Count 1 Against LVMPD, There Is No Evidence to Support This Type of Claim.................................................................................. 17**

1.  Binding Ninth Circuit Precedent Bars Plaintiff from Pursuing Count 1 against LVMPD Based on a Respondeat Superior Theory of Liability.... 18

2.  Evidence Conclusively Refutes Allegations that LVMPD Employed Unconstitutional Policies, Procedures, or Practices of Violating Constitutional Rights. ....................................................................... 19

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

3. No LVMPD Defendant Committed a Constitutional Violation, So a Monell Claim Cannot Exist as a Matter of Law. ...................................... 20

D. **The Court Should Enter Summary Judgment in LVMPD Defendants' Favor with Count 3 Because No Officer Engaged in Extreme or Outrageous Conduct and Plaintiff Provided No Evidence of Suffering Extreme Distress. ................................................................................................................ 21**

1. No Officers' Conduct Was Extreme or Outrageous. ............................... 22

2. Plaintiff's IIED Claim Fails on Summary Judgment Because He Has Not Come Forward with Evidence of Suffering Extreme Emotional Distress as Required under Nevada Law. ................................................................... 23

E. **Plaintiff's Count 4 under Title VI of the Civil Rights Act of 1964 Fails Because It is Not a Cognizable Claim on Its Own and No Evidence Supports This Legal Theory. .......................................................................................... 24**

1. No Evidence Shows Discriminatory Intent or Conduct in Violation of the Civil Rights Act against Plaintiff by an LVMPD Defendant During the At-Issue Stop and Arrest on August 8, 2020. ................................................... 24

2. Plaintiff's Count 4 Fails against LVMPD Because No Evidence Shows Racial Discrimination in Policies, Practices, Procedures, Training, or Supervision of Officers. ........................................................................... 25

V. **CONCLUSION** ......................................................................................... **25**

## EXHIBIT LIST

**Exhibit A**: Arrest Report

**Exhibit B**: Body Camera Footage (467-7; 467-6; 467-5)

**Exhibit C**: Body Camera Identification Log

**Exhibit D**: Wellpath Medical Screening Records

**Exhibit E**: Register of Actions

**Exhibit F**: Housing History Report

**Exhibit G**: Inmate Observation Sheet

**Exhibit H**: Internal Affairs Report

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

**Exhibit I**: Nevada Background Report

**Exhibit J**: Federal Bureau of Investigation Report

**Exhibit K**: Henderson Municipal Court Records

**Exhibit L**: Plaintiff's Responses to Sergeant Smith's Requests for Admissions

**Exhibit M**: LVMPD Policy 4/103.00

**Exhibit N**: Standardized Lesson Plan, Procedural Justice through Non-Biased Policing

**Exhibit O**: Cultural Diversity Training

**Exhibit P**: LVMPD Annual Report, 2020

**Exhibit Q**: Plaintiff's Responses to LVMPD Defendants' Requests for Production of Documents

**Exhibit R**: Deposition Transcript, Plaintiff

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 4 of 27

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3
4
5
6
7
8
9
10
11
12

This case stems from a traffic stop of Plaintiff on August 8, 2020, for suspected driving without an operating front right headlight.  But, what began as a routine traffic stop branched into Plaintiff becoming argumentative with the acting officer and, ultimately, Plaintiff calling 9-1-1 to voice his disagreement with the traffic stop and frustration at the officer.  That call to 9-1-1 constituted a crime under Nevada Revised Statute 207.245, which prohibits a person from knowingly using a government emergency phone line for a non-emergency purpose.  So, when the acting officer called his supervisor, Sergeant Smith, who was not on scene, Sergeant Smith authorized the acting officer to arrest Plaintiff.  Moreover, an on-scene records review of Plaintiff's name revealed Plaintiff was a convicted felon who had not registered his current address in Nevada.

13
14
15
16

Following the on-scene arrest, Plaintiff filed this lawsuit claiming that the traffic stop occurred without reasonable suspicion, the acting officer unlawfully searched his car, he was arrested without probable cause, and the stop amounted to racial discrimination.  Currently, the only remaining defendants in this case are Sergeant Smith and LVMPD.[1]

17
18
19
20
21

None of Plaintiff's claims have merit against these defendants.  As to Sergeant Smith, he did not participate in Plaintiff's traffic stop.  Nor was he on scene during the entire interaction with Plaintiff.  Rather, Smith's actions amount to answering two phone calls from Officer Hunt, where Smith authorized Hunt to issue a traffic citation against Plaintiff and, later, authorized an arrest of Plaintiff for misusing 9-1-1 during the stop.  Sergeant Smith's instructions were lawful

22
23
24

---

[1]  The Court dismissed defendant National Crime Information Center, and Plaintiff never served Officer Hunt.  Magistrate Judge Albregts's Report and Recommendation, (ECF No. 73), instructs dismissal of Hunt to occur based on the lack of service to date.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 5 of 27

and conclusively supported by body camera footage of Plaintiff's traffic stop and arrest. The law does not allow civil liability against Sergeant Smith for any other officers' actions that Smith did not order, did not assist, and did not know about. Further, no evidence indicates a racially discriminatory motive for the traffic stop or arrest.

As to LVMPD, no evidence supports discriminatory policies held by LVMPD. Evidence conclusively proves otherwise by showing exhaustive anti-bias training for officers and community programs focused on non-discriminatory policing.

For these reasons, Plaintiff's remaining claims in this case fail on their merits at this summary judgment stage. The Court can enter judgment in LVMPD Defendants' favor and close the case.

## II.  BACKGROUND

### A.  Factual History

On August 8, 2020, LVMPD police officer Shawn Hunt saw Plaintiff Mark Sykes driving at night with what appeared to be a front right headlight out. **Ex. A**, Arrest Report. Officer Hunt turned on his police cruiser's emergency lights to signal Plaintiff to pull over. Plaintiff did so in a retail center parking lot. The stop is all captured on Hunt's body camera. **Ex. B**, Body Camera Footage, Video 467-7 (showing footage from Officer Hunt's camera).[2]

Hunt approached Plaintiff's door and stated the reason he pulled him over as being a headlight out. **Id.** Plaintiff responded by opening his car door and, as he got out, toggling the steering control for his lights to turn them off then on. This toggling appeared to restart the front right headlight, to which Plaintiff walked to the front of his car and directed Officer Hunt to look. **Id.** at 1:00–1:10. Hunt explained that the right headlight initially was not on and asked

---

[2] The initial thirty seconds of body camera footage do not have sound, as is normal for the AXON system. At the thirty-second mark, recorded audio starts.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 6 of 27

Plaintiff to readjust the steering control to how it was before the stop to confirm that the light was not working. *Id.* at 1:10–1:15.[3]

Plaintiff toggled his headlight one more time, but the light did not change. *Id.* 1:20–1:40. Plaintiff then asked, "are we good"? *Id.*  Hunt responded that he wanted Plaintiff to stand in front of his police vehicle to identify him.  Plaintiff asked Hunt to then call his "Watch Commander." *Id.*  Hunt said he would do so; but Plaintiff, rather than following Hunt's instruction to stand near the police vehicle, tried to get back into Plaintiff's own car. *Id.* at 1:40–2:30.  Plaintiff continued to argue with Hunt rather than following the instruction to get in front of the police car, and Plaintiff continued protesting the reason for the stop. *Id.* at 1:40–8:30.

> 1.    ***Officer Hunt Calls Sergeant Joseph Smith, Who Was Not on Scene, About Plaintiff's Request for a Supervisor and the Basis for the Traffic Stop.***

After seven minutes of arguing with Hunt, Plaintiff finally identified himself as Mark Sykes. *Id.* at 8:00–1:00.  Officer Hunt then returned to his police car to call his supervisor, Sergeant Joseph Smith,[4] and run a background check for Plaintiff's name. *Id.* at 10:00–11:30.

Hunt reported to Sergeant Smith by phone call that he had pulled Plaintiff over because Plaintiff's right headlight was out and Plaintiff demanded a supervisor. *Id.* at 12:00–12:15. Sergeant Smith instructed Hunt to "give him a ticket," and Smith said he could not report to the scene because he was handling other duties at a different location. *Id.* at 12:30–12:36.

> 2.    ***Plaintiff Calls the 9-1-1 Emergency Line to Protest Hunt's Actions.***

After Hunt ended the call with Sergeant Smith, he returned to Plaintiff and found that

---

[3]  Plaintiff's criminal history reflects a misdemeanor citation from June 3, 2018, for "Headlamps not Illuminated When Required" in Henderson, and a "Rear License Plate Lamp Violation" in July 2018. **Ex. I**, Nevada Background Report at LVMPD00013–15.

[4]  During Plaintiff's deposition, he affirmed that Sergeant Smith was the same as "officer Smith" named in the Second Amended Complaint. **Ex. R**, Dep. Tr. Pl. 39:3–6.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 7 of 27

Plaintiff had called 9-1-1 to voice his disagreement with Hunt's actions and was actively talking with the dispatcher. *Id.* at 13:00–14:30 (showing Plaintiff saying, "I've got 9-1-1 on the phone"). Hunt then asked Plaintiff his current address, to which Plaintiff continued to argue and responded, "it's on file." *Id.* After minutes of arguing with Hunt, Plaintiff stated that his address was "448 Hunter Drive." *Id.* at 14:40–15:00, 15:25–15:35.

### 3. Officer Raymond Barrett Arrives on Scene to Assist Hunt.

After eighteen minutes into the stop, Officer Raymond Barrett arrived on scene to assist with the stop. *Id.* at 18:00–18:30; **Ex. B**, Body Camera Video 467-5 (showing footage from Officer Barrett's camera). *See also* **Ex. C**, Body Camera Identification Log. Officer Barrett handcuffed Plaintiff as Plaintiff walked back to his own car and shouted about Hunt pulling him over for a "goddamn head light." **Ex. B**, Body Camera Video 467-5. Barrett then explained how Plaintiff had committed a crime by misusing 9-1-1. *Id.*

### 4. Officer Hunt Calls Sergeant Smith to Report that Plaintiff Called 9-1-1 to Demand a Supervisor, To Which Smith Instructs Hunt to Arrest Plaintiff for Misusing 9-1-1.

As Officer Barrett applied handcuffs to Plaintiff, Officer Hunt called Sergeant Smith for the second time to report that Plaintiff called 9-1-1 to demand a supervisor. **Ex. B**, Body Camera Video 467-7 at 19:10–19:40. Smith instructed Hunt to arrest Plaintiff for misusing 9-1-1. *Id.* Hunt then informed Plaintiff that Plaintiff would be going to jail for misusing 9-1-1. *Id.* at 19:40–19:50; **Ex. R**, Dep Tr. Pl. 47:11–48:1.

### 5. Officer Hunt Transports Plaintiff to CCDC for Booking.

Hunt transported Plaintiff from the scene to the Clark County Detention Center ("CCDC"). **Ex. B**, Body Camera Video 467-6 (showing Hunt's body camera footage when taking Plaintiff to CCDC). Plaintiff received routine medical screening during booking, which noted his aggression toward staff but no physical harm or trauma to Plaintiff. **Ex. D**, Wellpath

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 8 of 27

Medical Records, Medical Pre-Screen. *See also* **Ex. G**, Inmate Observation Sheet.

Plaintiff's arrest ultimately occurred for two reasons: (1) misusing an emergency line in violation of Nevada Revised Statute 207.245; and (2) failing to register a current address as a felon, in violation of Nevada Revised Statute 179C.200. **Ex. A**, Arrest Report. Plaintiff's criminal history reflects prior charges for failing to register as a felon in violation of NRS 179C.200. **Ex. J**, Federal Bureau of Investigation Report at LVMPD00012, 14–15 (showing charges for "FAIL BY CONV PERS TO COMPLY W/NRS 1790C REQS"); **Ex. K**, Henderson Municipal Court Records at LVMPD000062.

### 6.     *Plaintiff Is Released from CCDC One Day after Arrest.*

The Clark County District Attorney declined to proceed with criminal charges against Plaintiff, though the presiding Justice Court found probable cause for charges on August 9, 2020. **Ex. E**, Register of Actions. Plaintiff was released from CCDC the day after arrest. **Ex. F**, Housing History.

### 7.     *LVMPD's Internal Affairs Bureau Reviews an Internal Complaint filed by Plaintiff and Finds that Hunt Did Not Violate Plaintiff's Rights.*

Plaintiff filed an internal affairs complaint against Officer Hunt. As is the standard for citizen complaints, LVMPD's Internal Affairs Bureau ("IA") routed the complaint and reviewing the allegations alongside available evidence. **Ex. H**, Internal Affairs Report. IA held that Plaintiff's complaints were not valid and closed the complaint. ***Id.*** ("Hunt was not threatening to the COM [Mr. Sykes], the COM was simply non compliant and uncooperative. Officer Hunt was professional and his actions were lawful and IAb observed no policy violation.").

### B.     Procedural History

Plaintiff filed this lawsuit one year after the at-issue traffic stop and arrest. His Second Amended Complaint, (ECF No. 22) currently governs the case. This pleading names four

**KAEMPFER CROWELL**
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc 6943.289

Page 9 of 27

defendants: the Las Vegas Metropolitan Police Department; Officer Hunt; Officer (Sergeant) Smith; and the National Crime Information Center ("NCIC").

The Second Amended Complaint brings four "Counts" in total: (1) violation of the Fourth Amendment protection against unreasonable searches and seizures and Fourteenth Amendment through deprivation without due process of law, against "Defendants Officer S. Hunt and Officer Smith"; (2) Libel under Nevada Revised Statute 200.510(1), against NCIC; (3) Intentional Infliction of Emotional Distress under Nevada law, against Officer Hunt and Sergeant Smith; and (4) violation of Title VI of the Civil Rights Act "pursuant to 42 U.S.C. § 2000d *et. seq.*," against LVMPD.

On August 11, 2023, Plaintiff filed a Motion to amend his Second Amended Complaint to add the Federal Bureau of Investigations as a defendant.  Plaintiff stated that he became "aware that the NCIC is not an entity or person" and believed that the FBI was the party that maintains the criminal information database on which Count 2 relies. (Mot. Am., ECF No. 51).

The Honorable Daniel J. Albregts, United States Magistrate Judge, denied Plaintiff's Motion as futile because Plaintiff's proposed claims against the FBI would be barred by the doctrine of sovereign immunity. (Order, ECF No. 54).  The Court then entered an Order on March 29, 2024, dismissing NCIC from the case. (Order, ECF No. 66).

On May 16, 2024, Magistrate Judge Albregts entered a Report and Recommendation to dismiss Defendant Hunt without prejudice because Plaintiff had not accomplished service of process against Hunt in the three years since this case began. (Report and Recommendation ("R&R"), ECF No. 73).  The deadline for Plaintiff to file an Objection to the R&R expired fourteen days later.  He did not file a timely Objection.  Nor has he filed an Objection to date.

As a result, only two defendants are left in this case at the summary judgment stage: the Las Vegas Metropolitan Police Department, and Sergeant Smith.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 10 of 27

III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires entry of summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Newton v. Uniwest Fin. Corp.*, 802 F. Supp. 346, 352 (D. Nev. 1990). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

To earn summary judgment, LVMPD Defendants hold the initial burden to show the absence of a genuine issue of material fact that ultimately resolves liability in their favor. *Garcia v. Burns*, 787 F. Supp. 948, 949 (D. Nev. 1992). If they satisfy this initial burden, the burden then shifts to Plaintiff to come forward with evidence that can support each element of his claims. In other words, he must present evidence that could support a jury's verdict in his favor. *Newton*, 802 F. Supp. at 352. The purpose of this burden-shifting procedure is to secure a just, speedy, and inexpensive outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

IV.   **ARGUMENT**

A.   **Summary Judgment Revolves Around Only Sergeant Smith and LVMPD.**

At this summary judgment stage, there are only two remaining defendants: (1) Sergeant Smith; and (2) the Las Vegas Metropolitan Police Department. Because Plaintiff's claims against these two defendants fail for the reasons discussed below, the Court can instruct the Clerk to enter judgment and close this case in full.

B.   **Plaintiff's Count 1 Fails against Sergeant Smith Because Smith Was Not on Scene during the Traffic Stop, Did Not Search Plaintiff's Car, Did Not Order the Traffic Stop or Search, and Lawfully Authorized Plaintiff's Arrest.**

Plaintiff's Count 1 proceeds through 42 U.S.C. § 1983. It alleges a violation of

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 11 of 27

1   Plaintiff's Fourth Amendment rights against unreasonable searches and seizures.

2   This claim under § 1983 cannot proceed under a theory of holding officials liable merely

3   for being on the same "team" as another at-issue official who actually performed the challenged

4   conduct.  Instead, to hold a named official liable under § 1983, the named official must have

5   personally participated in conduct that violated a citizen's constitutional rights. *Peck v. Montoya*,

6   51 F.4th 877, 890 (9th Cir. 2022) (explaining that "liability may not be imposed based on a 'team

7   effort' theory"); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable

8   for constitutional violations of his subordinates if the supervisor participated in or directed the

9   violations, or knew of the violations and failed to act to prevent them.").

10   *Peck v. Montoya* best explains this personal participation requirement for a claim under

11   § 1983.  The Ninth Circuit discussed how liability cannot exist if an official is a "mere

12   bystander" when other officials violate an individual's rights. *Peck*, 51 F.4th at 889.  The Circuit

13   turned to decisions like *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009), which rejected

14   claims against an officer when there was "no allegation that [the officer] either ordered the

15   unconstitutional search or directed it from afar" and did not discuss a "plan of action" for

16   unconstitutional conduct.  *Peck* ultimately rejected a claim against three officers who "did not

17   form a plan to shoot [the decedent]," nor did they "set in motion" acts by others with knowledge

18   that such acts "would cause a constitutional violation." *Peck*, 51 F.4th at 892 ("On Peck's theory,

19   any policy violation would make an officer strictly liable for any subsequent constitutional

20   violation by her fellow officers. That is not the law.").

21   Based on Ninth Circuit precedent, Plaintiff's Count 1 cannot proceed against Sergeant

22   Smith based just on Officer Hunt's actions.  Plaintiff must present evidence establishing that

23   Sergeant Smith was personally involved in unconstitutional conduct.  But Plaintiff has no such

24   evidence.  Thus, the Court should enter summary judgment in Sergeant's Smith's favor because

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 12 of 27

Smith did not conduct the traffic stop of Plaintiff, did not search Plaintiff's car, did not order the traffic stop to take place, and did not order a search of Plaintiff's car. **Ex. L**, Pl.'s Resps. to RFAs (in Response to Nos. 3 and 5, Plaintiff admitting that "Sergeant Smith did not search my vehicle on August 8, 2020").  The actions that Sergeant Smith performed—authorizing a traffic citation and, later, authorizing Officer Hunt to arrest Plaintiff after Plaintiff misused 9-1-1 in the course of a traffic stop—amounted to lawful conduct.

> **1.   Sergeant Smith's Conduct Amounts to the Lawful Instruction for a Traffic Citation and, Later, Arresting Plaintiff Based on Plaintiff Committing the Crime of Misusing 9-1-1 during a Traffic Stop.**

Here, body camera footage establishes the narrow actions taken by Sergeant Smith as to Plaintiff.  Sergeant Smith simply answered two phone calls from Officer Hunt while Hunt was on scene with Plaintiff.  Smith was not on scene during Plaintiff's stop, was not on scene during either call, and was not on scene at any other time involving Plaintiff.

During the first call, Sergeant Smith instructed Hunt to give Plaintiff a citation for having a headlight out. That lawful instruction came from the information that Hunt gave to Smith: Plaintiff had a headlight out while driving at night, leading to the traffic stop. **Ex. A**, Body Camera Video 467-7 at 0:00 to 3:00; Nev. Rev. Stat. § 484D.110 (requiring every motor vehicle, other than a motorcycle or moped, to "be equipped with at least two headlamps with at least one on each side of the front of the motor vehicle, which headlamps shall comply with the requirements and limitations set forth in this chapter"); Nev. Rev. Stat. § 484A.7035 (authorizing traffic citations); Nev. Rev. Stat. § 484A.7043 (defining potential penalties).

No court has held it was improper—especially not unconstitutional—for a supervising Sergeant to instruct an on-scene officer to give a traffic citation based on reported information of the citizen having a headlight out while driving at night.  And, even when taking as true Plaintiff's allegation that Hunt's report about a non-working headlight was inaccurate, liability

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 13 of 27

still cannot exist as to Sergeant Smith because Smith had no reason to believe that Hunt falsely reported information at the time.[5] *See United States v. Miranda-Guerena*, 445 F.3d 1233, 1237 (9th Cir. 2006) ("In this case, the information Deputy Davila received from Officer Hammarstrom was based on reasonable suspicion: the officer's personal observation of the traffic violations.").[6] So, Sergeant Smith cannot be held liable under § 1983 for this citation instruction.

During the second call that Hunt made to Sergeant Smith, Smith instructed Hunt to arrest Plaintiff after hearing facts that supported probable cause to believe Plaintiff committed a crime. Specifically, as body camera footage proves, Plaintiff called 9-1-1 during Hunt's traffic stop to protest Hunt's actions. **Ex. B**, Body Camera Video 467-7 at 13:00–14:30.  Plaintiff's 9-1-1 call violated Nevada Revised Statute 207.245, which makes it a gross misdemeanor for a person to knowingly use a government emergency phone line for a non-emergency purpose. Nev. Rev. Stat. 207.245; *Smith v. Dockery*, No. 2:20-cv-02261-CDS-BNW, 2023 WL 2434817, at *5 (D.

---

[5] LVMPD Defendants do not concede that Hunt's report was inaccurate, and it would be an error to analyze summary judgment under the assumption that Hunt's report was inaccurate. Body camera footage supports Hunt's actions as reasonable.  Indeed, when Hunt reported to Plaintiff that his front right headlight was out, Plaintiff got out of his car and undisputedly triggered the steering control to toggle his lights off then on. **Ex. B**, Body Camera Footage, Video 467-7.  This toggling appears to have restarted what initially was an inactive front right headlight.  Regardless, all that remains at issue on summary judgment is what Sergeant Smith actually knew and what Smith's actions were.

[6] *See also Miller-Cunningham v. MacAllister*, No. CV 17-02098-PHX-JAT, 2019 WL 1130091, at *7 (D. Ariz. Mar. 12, 2019) ("Although Plaintiff stated that he did not have a prior felony, these statements do not negate the reasonableness of Defendant's reliance. While it would have been ideal for Defendant to further inquire into the felonies based on Plaintiff's denial, it is not unusual for a suspect to deny guilt, and Defendant's reliance on dispatch and his Sergeant's averments that Plaintiff had been convicted of a felony was reasonable given that he had no reason to question the integrity of the information they gave to him."); *Lee v. Stone*, No. 1:20-CV-00186-BLW, 2024 WL 1975599, at *4 (D. Idaho May 3, 2024) ("And even assuming the Stones were not truthful in reporting the crime to Lakey, there are no facts supporting an inference that Deputy Lakey knew or should have known that to be so.").

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 14 of 27

Nev. Mar. 9, 2023) (discussing how "[t]he statute [NRS 207.245] outlaws calling emergency services 'when no actual or perceived emergency exists.'").

As further proof that probable cause supported this arrest, a justice court held that probable cause existed for the charges, though the district attorney later declined to pursue the charges. **Ex. E**, Register of Actions (stating "Probable Cause Found" on August 9, 2020); *Nieves Martinez v. United States*, 997 F.3d 867, 879 (9th Cir. 2021) ("Moreover, the prior judicial determination that there was probable cause to arrest Nieves Martinez precludes us from revisiting this issue.").

Indeed, Nevada law defines an emergency for purposes of calling 9-1-1 as, for example, "a situation in which immediate intervention is necessary to protect the physical safety of a person or others from an immediate threat of physical injury or to protect against an immediate threat of severe property damage." Nev. Rev. Stat. 207.245(6)(a).  Plaintiff conceded during this case that Hunt never took out his firearm nor called Plaintiff derogatory names. **Ex. L**, Pl.'s Resps. to RFAs (in Response to Nos. 3 and 5, Plaintiff admitting that Hunt "did not take his firearm out of his holster" and "did not call me any derogatory names during the incident").  So, there was no basis for Plaintiff to believe he required *emergency* police assistance to avoid an "immediate threat of physical injury" or "severe property damage."  Plainly stated, 9-1-1 is an emergency line for immediate police assistance to avoid severe harm; it is not an internal affairs reporting line for a citizen to voice disagreement about an officer's traffic stop as the stop is occurring.  Non-emergency lines such as 3-1-1 are available for such non-emergency purposes, as is LVMPD's website for filing citizen complaints.

Because body camera footage proves that Plaintiff misused 9-1-1 for a non-emergency purpose, Sergeant Smith's instruction for Officer Hunt to conduct an arrest stands valid and not in violation of Plaintiff's constitutional rights.  For that reason, Plaintiff's Count 1 fails on its

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 15 of 27

1  merits at this summary judgment stage.[7] *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354,

2  (2001) ("If an officer has probable cause to believe that an individual has committed even a very

3  minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest

4  the offender.").

5  **2.      *Qualified Immunity Shields Sergeant Smith from Count 1.***

6  Not only does Plaintiff's Count 1 against Sergeant Smith fail on its merits, but it also fails

7  for the independent ground of Smith's qualified immunity defense.  Qualified immunity shields

8  Smith from Count 1 unless Plaintiff identifies binding case law or a consensus of persuasive

9  authorities holding that the specific circumstances now before the Court previously constituted a

10 violation of an individual's constitutional right to be free from the at-issue conduct. *Ashcroft v.*

11 *al-Kidd*, 563 U.S. 731, 741 (2011); *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th

12 Cir. 2017) ("It is the plaintiff who bears the burden of showing that the rights allegedly violated

13 were clearly established.") (internal quotations omitted).

14 Thus, for Plaintiff to now overcome Sergeant Smith's qualified immunity defense, he

15 must present a "body of relevant case law" analyzing the "particular" facts like those here and

16 holding that the official violated the Fourth Amendment. *See O'Doan*, 991 F.3d at 1039 ("The

17 rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was

18 unlawful in the situation he confronted, which requires a high degree of specificity. . . . [A] body

19 of relevant case law is usually necessary to clearly establish the answer with respect to probable

20 cause.") (cleaned up).

21 ─────────────────────

22 [7] To reiterate, Plaintiff's Count 1 cannot proceed against Sergeant Smith under a theory of unconstitutional search of Plaintiff's car or unlawful traffic stop, because Sergeant Smith did not participate in those actions, did not order the traffic stop to take place, and was not on scene

23 when the search or traffic stop occurred.  The only theory on which Count 1 can proceed as to Officer Smith is the instruction to issue a citation to Plaintiff and then arrest Plaintiff when he

24 misused 9-1-1, which was valid and lawful for the reasons discussed in Section IV.B.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 16 of 27

1    Here, Plaintiff has not come forward with any evidence showing that Sergeant Smith

2    unlawfully searched his car or ordered another officer to take unconstitutional actions.  In fact,

3    Sergeant Smith did not search Plaintiff's car and did not conduct the initial traffic stop.  Smith's

4    actions boil down to (1) authorizing Hunt to issue a traffic citation based on Hunt's report of

5    Plaintiff driving with a headlight out at night; and (2) authorizing Hunt to arrest Plaintiff based

6    on Hunt's report of Plaintiff calling 9-1-1 during the traffic stop to protest Hunt's actions, as

7    shown in body camera footage.  No court has held that actions like Smith's under similar

8    circumstances violated the Fourth or Fourteenth Amendments.  So, even if Plaintiff had an

9    actionable Count 1 against Sergeant Smith on the merits, qualified immunity still bars Count 1

10   from proceeding against Sergeant Smith. *D.C. v. Wesby*, 583 U.S. 48, 65 (2018) (ordering

11   summary judgment in the officers' favor based on the holding that, "looking at the entire legal

12   landscape at the time of the arrests, [the officers] could have interpreted the law as permitting the

13   arrests here").

14       **C.    Plaintiff's Count 1 Did Not Name LVMPD as a Defendant and, If Plaintiff
             Intended to Assert Count 1 Against LVMPD, There Is No Evidence to**
15            **Support This Type of Claim.**

16       Plaintiff's Second Amended Complaint did not name LVMPD as a defendant to his

17   "Count 1." (Sec. Am. Compl. at 13, ECF No. 22) (specifying his "Count 1" is against

18   "Defendants Officer S. Hunt, and Officer Smith").  For that reason, the Court should not

19   construe Count 1 as proceeding against LVMPD in any way.  Count 1's failure as to Sergeant

20   Smith ends the summary judgment analysis as to Count 1 in full because the other named

21   defendant, Officer Hunt, is subject to dismissal as discussed in the Report and Recommendation,

22   (ECF No.73), for lack of service.

23       But, in an abundance of caution, this Motion addresses how Plaintiff does not have a

24   viable basis to assert Count 1 against LVMPD even if he sought to bring it against LVMPD or

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 17 of 27

1    against Sergeant Smith in his "official" capacity.

2        **1.    Binding Ninth Circuit Precedent Bars Plaintiff from Pursuing Count
             1 against LVMPD Based on a Respondeat Superior Theory of
3            Liability.**

4        The only way Plaintiff can bring a claim under 42 U.S.C. § 1983 against LVMPD is

5    through what is commonly referred to as a "*Monell*" claim based on the landmark decision

6    *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  A *Monell* claim cannot

7    proceed against LVMPD "*solely* because it employs a tortfeasor—or, in other words, a

8    municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691

9    (emphasis in original).

10       Rather, Plaintiff must provide evidence that "(1) a municipal employee violated [his]

11   constitutional rights; (2) the municipality has customs or policies that amount to deliberate

12   indifference; [and] (3) these *customs or policies* caused the employee's violation of [his]

13   constitutional rights." *Cadeaux v. Las Vegas Metro. Police Dep't*, 646 F. Supp. 3d 1312, 1327

14   (D. Nev. 2022) (emphasis added).

15       In terms of showing "customs" or "policies," there are four ways a plaintiff can do so: (a)

16   identifying an official, written policy that is unconstitutional on its face; (b) proving that there

17   are widespread unconstitutional practices similar to what the plaintiff allegedly suffered, which

18   constitute "a pervasive custom or practice" within the municipal organization; (c) identifying

19   how the municipality failed "to train, supervise, or discipline" its officers; or (d) identifying a

20   "decision or act by a final policymaker" to violate the Constitution.[8] *E.g. White v. Flathead*

21   _____

22   [8]  This last method requires proof that a policymaking official for the municipality expressly
     approved the unconstitutional act. *White*, 680 F. Supp. 3d at 1216 (explaining that "[a] county
23   may also be held liable for a constitutional violation if an authorized policymaker approves a
     subordinate's decision and the basis for it, which is known as ratification.").  For LVMPD, only
24   the Sheriff is a "policymaking" official for purposes of a *Monell* claim. *Hill v. Las Vegas Metro.
     Police Dep't*, 197 F. Supp. 3d 1226, 1234 (D. Nev. 2016), *aff'd*, 705 F. App'x 616 (9th Cir.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 18 of 27

1   *Cnty.*, 680 F. Supp. 3d 1211, 1215 (D. Mont. 2023).

2         Here, Plaintiff's Second Amended Complaint appears to proceed against LVMPD solely

3   under a "respondeat superior" theory. (Sec. Am. Compl. at 2–3, ECF No. 22) ("LVMPD is

4   believed to be liable under the theory of respondent superior for the torts committed by

5   Defendant Officer S. Hunt of the LVMPD.").   Because a respondeat superior theory cannot

6   proceed based on *Monell*, the Court should grant summary judgment in LVMPD's favor with

7   Plaintiff's Count 1.

8           **2.**      ***Evidence Conclusively Refutes Allegations that LVMPD Employed***

            ***Unconstitutional Policies, Procedures, or Practices of Violating***

9               ***Constitutional Rights.***

10         Aside from Plaintiff's respondeat superior theory being invalid as a matter of law, no

11   evidence indicates that LVMPD employed unconstitutional policies or procedures.  The opposite

12   is true.   Evidence exchanged between the parties during discovery conclusively proves that

13   LVMPD did not employ discriminatory policies and procedures.

14         At the time of Plaintiff's arrest in 2020—and to today—LVMPD implemented extensive

15   efforts to prevent biased policing.  LVMPD's written policies expressly prohibit discrimination

16   in policing and prohibit biased-based activities:

17           Members of this department are expressly prohibited from engaging in biased-
based policing activities. Members will not discriminate against any person. Any

18           arrest, detention, interdiction, asset seizure or forfeiture, or other law enforcement
action or statement based in whole or in part on the actual or perceived race,

19           ethnicity, color, national origin, gender, age (except in the case of juvenile
offenses), religion, culture, disability, sexual orientation, economic status, or other

20           trait of a person or group is strictly forbidden unless such trait is a part of an
identifying description of a specific suspect for a specific crime.

21

22   **Ex. M**, LVMPD Policy 4/103.00.  Even more, LVMPD requires officers to take advanced

23   _____

2017) ("Nevada law designates the Sheriff of Clark County as the final policy-making authority

24   for Metro.").

**KAEMPFER CROWELL**
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 19 of 27

training for non-biased policing. **Ex. N**, Standardized Lesson Plan, Procedural Justice through Non-Biased Policing.  And, LVMPD works with the community to review and train officers on diversity and cultural competency. **Ex. O**, Cultural Diversity Training; **Ex. P**, Annual Report, 2020, at LVMPD000197 (discussing how "LVMPD created an Ethics, Values, and Professionalism course, which emphasized fair and impartial policing, and other aspects of constitutional policing").

Altogether, it is Plaintiff's burden at this stage to come forward with evidence to support a viable *Monell* claim; it is not LVMPD's burden to prove itself innocent. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) ("As we stated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), 'the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'").  Even so, LVMPD has evidence conclusively disproving allegations of inadequate, unconstitutional, or biased policies and procedures.  There is no basis on which Plaintiff's Count 1 can proceed past summary judgment against LVMPD.  The Court should enter summary judgment for LVMPD in full with Count 1.

### 3. *No LVMPD Defendant Committed a Constitutional Violation, So a* Monell *Claim Cannot Exist as a Matter of Law.*

As discussed above, Plaintiff cannot proceed with Count 1 as to LVMPD because he has no evidence of unconstitutional training, policies, practices, or procedures.  However, there is another independent reason why Count 1 cannot proceed against LVMPD: no evidence shows that an LVMPD officer violated one of Plaintiff's constitutional rights.

Officer Hunt lawfully conducted a traffic stop under the belief that a right headlight was out.  Hunt could lawfully ask Plaintiff's name and information during the stop. *Gravelle v. State*,

**KAEMPFER CROWELL**
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 20 of 27

1   513 P.3d 1290 (Nev. App. 2022) (unpublished) ("Moreover, the Nevada Supreme Court has

2   noted that '[d]uring the course of a lawful traffic stop, officers may complete a number of routine

3   tasks,' such as 'ask for a driver's license and vehicle registration, run a computer check, and issue

4   a ticket.'").  Ultimately, Plaintiff was not arrested for the headlight being out.  He was lawfully

5   arrested for misusing 9-1-1 and failing to register his address as a felon—as proven in body

6   camera footage.  Moreover, Hunt could lawfully search Plaintiff's car as an incident to arrest and

7   for safety purposes. *United States v. Thompson*, No. 2:16-cr-00230-GMN-CWH, 2018 WL

8   4005178, at *2 (D. Nev. Aug. 22, 2018) (discussing "the automobile exception" for searches of a

9   vehicle incident to arrest).

10          Because each aspect to the stop and arrest was lawful, Plaintiff's Count 1 cannot proceed

11   against LVMPD as a matter of law. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir.

12   2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation.").

13          **D.     The Court Should Enter Summary Judgment in LVMPD Defendants' Favor
               with Count 3 Because No Officer Engaged in Extreme or Outrageous
14             Conduct and Plaintiff Provided No Evidence of Suffering Extreme Distress.**

15          Plaintiff's Count 3 is for Intentional Infliction of Emotional Distress ("IIED") under

16   Nevada law.  An IIED claim has three elements: (a) the defendant engaged in "extreme and

17   outrageous conduct with either the intention of, or reckless disregard for, causing emotional

18   distress," (b) the plaintiff "suffered severe or extreme emotional distress," and (c) the

19   defendant's actions caused the plaintiff to suffer such severe or extreme emotional distress.

20   *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc).  Extreme and

21   outrageous conduct for purposes of an IIED claim means behavior that goes "outside all possible

22   bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v.

23   Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

24          The Court holds the role of deciding whether a defendant's conduct could rise to the level

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 21 of 27

1    of "extreme" and "outrageous." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev.

2    2009).   To make this legal determination in the context of a police officer's conduct, this Court

3    has turned to the Restatement (Second) of Torts § 46 for examples to guide the analysis, just as

4    the Nevada Supreme Court has done in the past. *Riggs v. Nye Cty.*, No. 2:17-cv-02627-APG-

5    VCF, 2019 WL 1300074, at *6 (D. Nev. Mar. 21, 2019).   Examples include "where the officer

6    attempts to extort money by a threat of arrest," or where the officer "attempts to extort a

7    confession by falsely telling the accused her child has been injured in an accident and she cannot

8    go to the hospital until she confesses." *Id.*   The core tenet of an IIED claim against a police

9    officer is "extreme abuse" of his or her government position. *Id.*

10                    **1.    *No Officers' Conduct Was Extreme or Outrageous.***

11          Plaintiff's central allegations with Count 3 against LVMPD Defendants are that he was

12   subject to a traffic stop, search, and arrest without sufficient legal justification and out of racial

13   animus. *See generally* (Sec. Am. Compl., ECF No. 22).   But, as Plaintiff has conceded, no

14   officer pointed a gun at him; no officer called him racially derogatory names or took any action

15   by referencing his race; and body camera footage establishes the lawful basis for arresting

16   Plaintiff based on misusing 9-1-1 during the traffic stop. **Ex. L**, Pl.'s Resps. to RFAs; **Ex. A**,

17   Body Camera Footage 467-7.

18          Because none of the LVMPD Defendants' actions consisted of "extreme and outrageous"

19   conduct as a matter of law for purposes of an IIED claim, the Court should enter summary

20   judgment in LVMPD Defendants' favor with Plaintiff's Count 3.   In fact, even if reasonable

21   suspicion and probable cause did not support LVMPD Defendants' actions, Plaintiff's Count 3

22   would still fail as a matter of law because merely conducting a stop and arrest without sufficient

23   legal justification is not "extreme abuse" of police power. *Kelley v. City of Henderson*, No. 2:15-

24   cv-02204-APG-VCF, 2017 WL 2802732, at *7 (D. Nev. June 27, 2017) ("Kelley has alleged the

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc 6943.289

Page 22 of 27

1    detectives erroneously arrested her without probable cause. Without more, she has not alleged an

2    extreme abuse of police power.").

3              **2.     Plaintiff's IIED Claim Fails on Summary Judgment Because He Has
                       Not Come Forward with Evidence of Suffering Extreme Emotional
4                      Distress as Required under Nevada Law.**

5              To proceed with an IIED claim, Plaintiff has the burden to come forward with evidence

6    that he suffered extreme emotional distress because of LVMPD Defendants' conduct.  Summary

7    judgment is proper in LVMPD's favor merely by pointing to the lack of evidence that Plaintiff

8    suffered extreme emotional distress. *Quinn v. Thomas*, No. 2:09-cv-00588-KJD, 2010 WL

9    3021795, at *6 (D. Nev. July 28, 2010) ("Because Plaintiff has not raised a genuine issue of

10   material fact regarding extreme and outrageous conduct or sufficiently established that he

11   experienced severe emotional distress, the Court grants summary judgment on Plaintiff's IIED

12   claim against LVMPD."); *Larsen v. City of Henderson*, No. 2:06-cv-00153-RLH-RJJ, 2007 WL

13   1703459, at *3 (D. Nev. June 11, 2007) (granting summary judgment in the defendants' favor

14   with an IIED claim because "Plaintiff has not submitted any additional or alternative evidence to

15   show that he suffered severe emotional distress").

16             Plaintiff did not come forward with evidence of suffering extreme distress because of any

17   LVMPD Defendant's actions.   During discovery, he conceded that he did not seek medical

18   treatment following the arrest. **Ex. Q**, Pl.'s Resps. to RFPs ("I have not received any medical

19   treatment as a result of the arrest on August 8, 2020," and "I have no medical documents as a

20   result of the arrest on August 8, 2020").   And, his medical records from booking immediately

21   after arrest establish that he did not suffer extreme emotional distress or physical injury. **Ex. D**,

22   Wellpath Medical Records, Medical Pre-Screen at LVMPD000116–19 (answering "No" to

23   whether "arrestee experienced any trauma prior to arrival at facility" and "No" to whether

24   "arrestee [has] visible signs of trauma and/or illness").

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 23 of 27

As a result, Nevada law supports summary judgment in LVMPD Defendants' favor with Plaintiff's Count 3 for IIED under Nevada law. *See Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (affirming summary judgment because the plaintiff "presented no objectively verifiable indicia of the severity of his emotional distress").

**E.      Plaintiff's Count 4 under Title VI of the Civil Rights Act of 1964 Fails Because It is Not a Cognizable Claim on Its Own and No Evidence Supports This Legal Theory.**

Plaintiff's Count 4 proceeds under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.* Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Banks v. Albertsons Deal & Delivery*, No. 2:23-cv-01629-GMN-DJA, 2024 WL 1701919, at *2 (D. Nev. Apr. 19, 2024). Summary judgment is proper in LVMPD Defendants' favor because Plaintiff has no evidence of racial discrimination by an LVMPD Defendant.

**1.      No Evidence Shows Discriminatory Intent or Conduct in Violation of the Civil Rights Act against Plaintiff by an LVMPD Defendant During the At-Issue Stop and Arrest on August 8, 2020.**

Plaintiff's Count 4 fails because there is no evidence of racial discrimination behind any LVMPD officer's actions during the stop and arrest of Plaintiff in August 2020. Evidence, instead, proves otherwise.

During discovery, Plaintiff admitted that Officer Hunt did not use any racially derogatory names toward Plaintiff and that "no Officers . . . said anything about race or my race during the incident on August 8, 2020." **Ex. L**, Pl.'s Resps. to RFAs. Plaintiff's Count 4 appears to rely solely on Plaintiff's subjective belief that his arrest must have occurred for racially discriminatory reasons because he is a Black male adult. That illogical conclusion is not enough to sustain a claim. *See Aquino v. Cnty. of Monterey Sheriff's Dep't*, No. 5:14-cv-03387-EJD,

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 24 of 27

2016 WL 5946867, at *14 (N.D. Cal. Sept. 29, 2016) ("A plaintiff's subjective belief that a defendant's conduct is motivated by discriminatory intent is not sufficient to defeat summary judgment."); *McKenzie v. City of Milpitas*, 738 F.Supp. 1293, 1301 (N.D. Cal. 1990) (holding that, where the only evidence was that plaintiffs were black and that the police officers "immediately resorted to the use of force in a situation whose objective context did not call for this force," racially discriminatory intent could not support a section 1981 claim).

Moreover, Plaintiff cannot pursue a claim under Title VI against officials in their "individual" capacities as a matter of law. *Sykes v. Henderson Police Dep't*, No. 2:22-cv-00956-JAD-EJY, 2022 WL 4227337, at *8 (D. Nev. Sept. 12, 2022), *report and recommendation adopted*, No. 2:22-cv-00956-JAD-EJY, 2022 WL 9171117 (D. Nev. Oct. 14, 2022) ("Defendants Watts, Shaffer, and Abernathy are not 'entities' under Title VI that receive federal funding. Individuals cannot be held liable under Title VI.").  So, to the extent Plaintiff intended to name Sergeant Smith in his individual capacity with Count 4, the law bars him from doing so.

### 2. Plaintiff's Count 4 Fails against LVMPD Because No Evidence Shows Racial Discrimination in Policies, Practices, Procedures, Training, or Supervision of Officers.

Just as Plaintiff provided no evidence of unconstitutional policies or procedures by LVMPD, he has not come forward with evidence of racially discriminatory practices by LVMPD.  As cited in this Motion, evidence disproves allegations of racially discriminatory practices by LVMPD. **Ex. M**, LVMPD Policy 4/103.00; **Ex. N**, Standardized Lesson Plan, Procedural Justice through Non-Biased Policing; **Ex. O**, Cultural Diversity Training; **Ex. P**, Annual Report, 2020, at LVMPD000197.  Plaintiff's Count 4 fails on summary judgment.

## V. CONCLUSION

The Court should enter summary judgment in LVMPD Defendants' favor based on the conclusive evidence at this stage.  After doing so, no active claims remain in the case.  The Court

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

3767377_1.doc  6943.289

Page 25 of 27

should instruct the Clerk to enter Judgment accordingly and close the case.

DATED this <u>9th</u> day of July, 2024.

KAEMPFER CROWELL


By:     /s/ Lyssa S. Anderson
        LYSSA S. ANDERSON (Nevada Bar No. 5781)
        KRISTOPHER J. KALKOWSKI (Nevada Bar No. 14892)
        1980 Festival Plaza Drive, Suite 650
        Las Vegas, Nevada 89135
        ***Attorneys for Defendants Las Vegas Metropolitan Police
        Department and Sergeant Smith***

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 26 of 27

## **CERTIFICATE OF SERVICE**

I certify that I am an employee of KAEMPFER CROWELL, and that on the date below, I caused the foregoing **LVMPD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served via CM/ECF addressed to the following:

Mark Clifford Sykes
P.O. Box 674
Russellville, AR  72801

windsorsykes@yahoo.com
*(Via CM/ECF)*

***Plaintiff, Pro Se***

DATED this 9th day of July, 2024.

/s/
an employee of Kaempfer Crowell

**KAEMPFER CROWELL**
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

3767377_1.doc  6943.289

Page 27 of 27