**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MARK CLIFFORD SYKES,<br><br>    Plaintiff,<br><br>    v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>    Defendants. | Case No. 2:21-cv-01479-RFB-DJA<br><br>**ORDER** |

    Before the Court is Defendants' motion for summary judgment, ECF No. 75, and Plaintiff's two motions for leave to file sur-reply to that motion. ECF Nos. 79, 80. For the following reasons, the Court grants Defendants' motion for summary judgment and denies both motions for leave to file.

**I.    PROCEDURAL BACKGROUND**

    *Pro se* Plaintiff Mark Clifford Sykes filed a complaint on August 6, 2021, a First Amended Complaint on December 27, 2021, and a Second Amended Complaint on October 17, 2022. ECF Nos. 1, 10, 22. On March 3, 2023, the Court allowed the following claims to proceed: Fourth Amendment unreasonable search and seizure, Fourteenth Amendment due process, Fourteenth Amendment equal protection, and intentional infliction of emotional distress against Defendant Officer Shawn Hunt and Defendant Sergeant Joseph Smith, Fourth Amendment unlawful arrest against solely Defendant Sergeant Smith, Title VI Civil Rights Act against Defendant Las Vegas Metropolitan Police Department ("LVMPD"), and defamation against Defendant Officer Hunt and the National Crime Information Center. ECF No. 23. On March 29, 2024, the Court dismissed

1   with prejudice the National Crime Information Center. ECF No. 66. On May 16, 2024, Judge
2   Albregts issued a Report and Recommendation recommending that Officer Hunt be dismissed for
3   Plaintiff's failure to serve under Fed. R. Civ. P. 4(m). ECF No. 73. The Court adopted the Report
4   and Recommendation in full on October 21, 2024. ECF No. 83. On July 9, 2024, Defendants
5   LVMPD and Sergeant Smith filed the instant Motion for Summary Judgment. ECF No. 75. It was
6   briefed by August 15. ECF Nos. 77, 78. On September 11, 2024, Plaintiff filed the instant
7   "Motion/Petition for Leave to File a Sur-Reply." ECF No. 79. On September 20, he filed another
8   "Motion/Petition for Leave to File a Sur-Reply." ECF No. 80. These were briefed by October 7,
9   2024. ECF Nos. 81, 82. This Order follows.

10  **II.    FACTUAL BACKGROUND**

11    The Court finds the following facts to be undisputed based on the record. Part of the record
12  in this case includes the body-worn camera footage from LVMPD Officer Hunt and Officer
13  Barrett. When, as in this case, the subject incident is unambiguously captured in a video recording,
14  the Court views those "facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372,
15  380-81 (2007).

16    On August 8, 2020, LVMPD police officer Hunt turned on his emergency lights to signal
17  to Plaintiff to pull over, which he did in a retail center parking lot. The stop is captured by Officer
18  Hunt's body-worn camera. The footage shows Officer Hunt approaching Plaintiff to inform him
19  that the reason for the stop is because his front right headlight was out. Plaintiff asks Officer Hunt
20  if he can get out to see the light. Plaintiff gets out of the car and sees that his front right headlight
21  is on. Officer Hunt tells him that the headlight was not previously on and expresses to Plaintiff that
22  he believes he had turned the light on just before exiting the vehicle. Seeing that the headlight was
23  on, Plaintiff asks, "Are we good?" Officer Hunt responds, "Actually, no, go step in front of my
24  vehicle please, okay?" In response, Plaintiff asks Hunt, "Can you call your watch commander?"
25  Officer Hunt agrees.

26    Plaintiff begins to return to his vehicle, but is stopped by Officer Hunt, who reiterates his
27  command for Plaintiff to go towards Officer Hunt's vehicle. Plaintiff reiterates his request for
28  Officer Hunt's supervisor. After several minutes of argument, Officer Hunt says, "I will call my

1  supervisor… after you step in front of my vehicle and identify who you are." Plaintiff provides
2  Officer Hunt with his name and date of birth. Plaintiff again asks for Officer Hunt to call his
3  supervisor. Officer Hunt says, "Now when I ask him to come here, he's going to ask why does he
4  need to be there…" to which Plaintiff responds, "Because you are pulling me over unlawfully."

5         Following further argumentation, Officer Hunt returns to his vehicle to run a background
6  check and to call Sergeant Smith. Officer Hunt tells Sergeant Smith: "I'm on this stop right now
7  and the guy is very adamant about a supervisor coming… so basically I pulled him over because…
8  cause he says I unlawfully pulled him over… so his right headlight was out, made a u-turn… he
9  pulled into a parking spot, as he got out, he flipped his thing on and the headlights are on, but…"
10 When Sergeant Smith asks why Plaintiff wants to speak to a supervisor, Officer Hunt states: "He's
11 saying that I unlawfully stopped him and he's demanding a supervisor…" Sergeant Smith instructs
12 Officer Hunt to tell Plaintiff that he is busy, that it is not an unlawful stop, and to give Plaintiff a
13 ticket.

14        Officer Hunt returns to find Plaintiff calling 911. Officer Hunt says that he just spoke to
15 his supervisor and that his supervisor said he would not come. Plaintiff claims that this breaks
16 protocol and that the supervisor must come. Officer Hunt asks Plaintiff for his current address,
17 which, after further argument, Plaintiff provides. Following continued argument, Officer Hunt
18 states that he is engaging in a vehicle frisk of the car for weapons based on Plaintiff's criminal
19 history.

20        Around eighteen minutes into the stop, Officer Raymond Barrett arrives on the scene. His
21 body-worn camera footage shows him handcuffing Plaintiff and explaining that he cannot misuse
22 911.

23        As Officer Barrett applies the handcuffs, Officer Hunt again calls Sergeant Smith. Officer
24 Hunt says: "[H]e called 911 and was demanding a supervisor. But, we're good out here." Sergeant
25 Smith instructs him to arrest Plaintiff for misuse of 911. In turn, Officer Hunts informs Plaintiff
26 that he is going to jail for misuse of 911. Officer Barrett and Officer Hunt go through the car
27 looking for Plaintiff's keys to secure the car. Officer Hunt then transports Plaintiff from the scene
28 to the Clark County Detention Center.

The parties dispute whether Plaintiff's headlight was on.

## III.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380 (alteration in original) (internal quotation marks omitted). "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## IV.   DISCUSSION

The Court now turns to the merits of the pending Motion for Summary Judgement.

### A.  Section 1983 Claims Against Sergeant Smith

Plaintiff is bringing several claims under Section 1983 against Sergeant Smith, including unreasonable search and seizure and unlawful arrest under the Fourth Amendment and equal protection and due process violations under the Fourteenth Amendment.

To make out a *prima facie* case under § 1983, a plaintiff must show that a defendant: (1) acted under color of law, and (2) deprived the plaintiff of a constitutional right. Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir. 1988). "Liability under [§] 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Additionally, "[a] supervisor is only liable for the constitutional

violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." Id. (citations omitted).

As the undisputed facts reflect, Sergeant Smith engaged in two actions: (1) he took a call from Officer Hunt and authorized the issuance of a citation, and (2) he took another call from Officer Hunt and authorized an arrest. He is not alleged to have participated in the stop, arrest, or search of the vehicle beyond these actions. The Court will consider each action in turn.

During the first call, Officer Hunt informed Sergeant Smith that he pulled Plaintiff over for having a headlight out while driving at night, which led to a traffic stop. In response, Sergeant Smith authorized the issuance of a citation. Section 484D.110 of the Nevada Revised Statutes requires every motor vehicle, other than a motorcycle or moped, to "be equipped with at least two headlamps with at least one on each side of the front of the motor vehicle, which headlamps shall comply with the requirements and limitations set forth in this chapter." Nev. Rev. Stat. § 484D.110. Therefore, driving with a headlight out is a traffic offense in Nevada.

The Ninth Circuit has held that only reasonable suspicion is required for a traffic stop. United States v. Lopez-Soto, 205 F.3d 1101, 1104–05 (9th Cir. 2000) ("We join those circuits and reaffirm that the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops."). The parties here dispute whether Plaintiff's headlight was actually out. However, this dispute does not concern a material fact. Regardless of whether the headlight was actually out at the time of the stop, the facts as presented to Sergeant Smith – that Officer Hunt pulled Plaintiff over because his headlight was out – constitute sufficient evidence that Plaintiff engaged in a traffic violation to support authorizing the issuance of a citation. See United States v. Miranda-Guerena, 445 F.3d 1233, 1237 (9th Cir. 2006) ("In this case, the information Deputy Davila received from Officer Hammarstrom was based on reasonable suspicion: the officer's personal observation of the traffic violations."). Therefore, Sergeant Smith's action in authorizing the issuance of the citation was not unconstitutional.

During the second call, Officer Hunt informed Sergeant Smith that Plaintiff called 911 to report the traffic stop. Sergeant Smith authorized arresting him for misuse of a 911 call. Section

1  207.245 of the Nevada Revised Statutes outlaws calling emergency services "when no actual or
2  perceived emergency exists." Nev. Rev. Stat. § 207.245. Someone who violates this statute is
3  guilty of a gross misdemeanor. Id. A gross misdemeanor may be punished by imprisonment under
4  Nevada law. Nev. Rev. Stat. § 193.140. Nevada law defines an emergency for purposes of calling
5  911 as "a situation in which immediate intervention is necessary to protect the physical safety of
6  a person or others from an immediate threat of physical injury or to protect against an immediate
7  threat of severe property damage." Nev. Rev. Stat. § 207.245(6)(a).

8  To establish a false arrest claim, a plaintiff must demonstrate that his arrest was made
9  "without probable cause or other justification." Dubner v. City & Cnty. of San Francisco, 266 F.3d
10 959, 964-65 (9th Cir. 2001); see also Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.
11 1992). The absence of probable cause is required to assert a false arrest claim. See United States
12 v. McCarty, 648 F.3d 820, 838 (9th Cir. 2011), as amended (Sept. 9, 2011) (internal quotation
13 marks omitted); see also Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause to arrest
14 exists where, under the totality of the circumstances known to the arresting officers, a prudent
15 person would have concluded that there was a fair probability that the arrestee had committed a
16 crime. See Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003).

17 Here, based on the information provided to Sergeant Smith, it is undisputed that Plaintiff
18 called 911 during the traffic stop. In the SAC, Plaintiff raises his concerns with the constitutionality
19 of Officer Hunt's actions but does not assert that he feared imminent injury or harm to the vehicle.
20 There are no facts in the record reflecting that the traffic stop constituted an emergency, as nothing
21 indicates that there was an immediate threat of physical injury or severe property damage. Based
22 on the information communicated to Sergeant Smith, Plaintiff's actions constituted probable cause
23 to authorize the arrest for misuse of a 911 call. Therefore, the Court finds that Sergeant Smith's
24 authorization of the arrest was not unconstitutional.

25 Since there was reasonable suspicion for the traffic stop and probable cause for the arrest,
26 and Sergeant Smith's actions were limited to the two phone conversations with Officer Hunt,
27 nothing in the record supports a finding that he participated in or directed a constitutional violation,
28 nor that he knew of a constitutional violation and failed to act. Therefore, the Court grants summary

1 judgment for Defendant Smith on the Section 1983 causes of action, including the alleged
2 violations of the Fourth and Fourteenth Amendments.

### B. Intentional Infliction of Emotional Distress Claim Against Sergeant Smith

Plaintiff also brings a claim for intentional infliction of emotional distress against Sergeant Smith. Under Nevada law, the elements of this cause of action are (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation. Star v. Rebello, 625 P.2d 90, 91–2 (Nev. 1981). In order for conduct to be extreme and outrageous it must be "outside all possible bounds of decency and [ ] regarded as utterly intolerable in a civilized community." Maduike v. Agency Rent–A–Car, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks omitted).

As described above, based on the information provided to Sergeant Smith, there was probable cause to arrest Plaintiff for the misuse of a 911 call. His conduct in authorizing the citation and arrest was not "extreme and outrageous." Nothing in the record suggests that Sergeant Smith acted with the intent to cause, or reckless disregard for causing, emotional distress, nor that Plaintiff suffered severe and extreme emotional distress. Therefore, the Court grants summary judgment for Defendant Smith on the intentional infliction of emotional distress claim.

### C. Title VI Claim Against LVMPD

Finally, Plaintiff brings a discrimination claim under Title VI Civil Rights Act against Defendant LVMPD. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To allege a *prima facie* case of disparate impact under Title VI requires the plaintiff to: (1) identify the specific practices or policies being challenged; (2) show disparate impact; and (3) prove causation. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990).

Plaintiff alleges that LVMPD uses traffic stops disparately to unlawfully detain Black people. However, nothing in the record supports the finding that such racially discriminatory practice or policy exists. During discovery, Plaintiff stated that Officer Hunt did not use any

racially derogatory names toward Plaintiff and alleges no other form of racial discrimination. Therefore, the Court grants summary judgment for Defendant LVMPD on the Title VI claim.

### D. Motions for Leave to File Sur-Replies

Defendant files two motions for leave to file sur-replies. Both motions, though docketed twice, are the same document. Sur-replies are proper only when a reply brief raises new evidence or new arguments that the party could not have fairly addressed in a response through the normal course of briefing established in Local Rule 7-2. See D. Nev. Local Rule 7-2. Here, Defendants' reply presents no new arguments or evidence. Plaintiff argues that Defendants mischaracterize his prior arrest records, fail to address how their own traffic enforcement policies were violated, and make new assertions regarding qualified immunity. However, Defendants do not reference Plaintiffs' arrest records in the reply. They restate their same arguments related to qualified immunity that they raised in the motion for summary judgment. Finally, Defendants' failure to respond to one of Plaintiff's arguments is not cause for Plaintiff to make further arguments in a sur-reply. Therefore, Plaintiff's motions to file a sur-reply are denied.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 75), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to File Sur-Reply, (ECF No. 79, 80), are **DENIED**.

The Clerk of Court is instructed to close this case.

**DATED**: March 29, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**